

**SIGNED THIS 25th day of September, 2019**

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

In re:
**JENNY LYNN EDWARDS,**
    Debtor.

**Chapter 13**
**Case No. 18-62164**

**JENNY LYNN EDWARDS,**
    Plaintiff,
v.
**B&E TRANSPORT, LLC,**
    Defendant.

**Adv. P. No. 19-06026**

## MEMORANDUM OPINION

The Court must decide whether it is appropriate to award actual and punitive damages, as well as attorneys' fees, for violations of the automatic stay. The Court concludes that it is.

### Findings of Fact

Jenny Lynn Edwards filed a voluntary chapter 13 bankruptcy petition on October 31, 2018.[1] Ms. Edwards, by counsel, filed a complaint initiating this adversary proceeding on April 16, 2019. ECF Doc. No. 1. In her complaint, Ms. Edwards alleges that the defendant, B&E Transport, LLC ("B&E"), violated the automatic stay by repossessing her 2003 Harley Davidson

---

[1] ECF Doc. No. 1, case number 18-62164.

FLSTCI on November 2, 2018, two days after she filed her bankruptcy petition. *See id.* Ms. Edwards seeks return of the motorcycle, actual damages for violation of the automatic stay, punitive damages, and recovery of all reasonable legal fees and expenses.

B&E did not file an answer. Ms. Edwards filed a motion for default judgment on June 18, 2019. *See* ECF Doc. No. 11. On July 15, 2019, the Court held a hearing on entry of a default judgment.[2] At the hearing, both Ms. Edwards and her husband testified. *See* ECF Doc. No. 12. The Court took the matter under advisement. *See* ECF Doc. No. 13.

Ms. Edwards is a debtor in bankruptcy. When Ms. Edwards filed her bankruptcy petition, with limited exceptions not applicable here,[3] everything she owned or had an interest in became property of her estate.[4] B&E is a creditor of Ms. Edwards. Ms. Edwards purchased a motorcycle from B&E in May 2018 for $10,000.[5] She paid $2,500 at the time of sale and financed $7,500 directly through B&E.[6] She disclosed B&E on her petition and mailing matrix. The Bankruptcy Noticing Center provided a copy of the Notice of Bankruptcy to B&E. After she filed her petition, Ms. Edwards provided actual notice to B&E of the bankruptcy.[7]

When she filed her bankruptcy petition, she was current on her payments to B&E.[8] Two days after she filed her petition, B&E repossessed the motorcycle. After repossession, B&E accelerated the note and demanded full payment.[9]

---

[2] Citations to the transcript of the July 15, 2019 hearing will be designated as "Tr." A copy of the transcript has been docketed in the adversary proceeding at ECF docket number 16.
[3] 11 U.S.C. § 541(b) and (c)(2) describe certain property excluded from a bankruptcy estate. None of these exclusions apply to the property in this adversary proceeding.
[4] *See* 11 U.S.C. § 541(a).
[5] Tr. at 20:19–20:23.
[6] *Id.*
[7] Mr. and Mrs. Edwards testified that Mr. Edwards personally informed B&E of the bankruptcy. *See id.* at 10:2–10:14, 17:14–19:4.
[8] Ex. B (letter from Jenny Edwards to Mr. Slayton), ECF Doc. No. 14-1; Tr. at 17:6–17:10.
[9] *See* Ex. A, at 6, ECF Doc. No. 14.

At no time did B&E seek relief from the automatic stay.

Counsel for Ms. Edwards notified B&E that repossession and retention of the motorcycle is a violation of the automatic stay.[10]  Ms. Edwards's husband communicated directly with B&E regarding the violation of the stay, requesting return of the motorcycle.[11]  Ms. Edwards proposed, and the Court confirmed, a chapter 13 plan that provides for the remaining balance of the debt to B&E to be paid in full plus interest.[12]  None of these efforts made a difference:  B&E refused to return the motorcycle.

After B&E failed to respond to or comply with letters, direct communication, and the chapter 13 plan, counsel for B&E filed an adversary proceeding seeking damages for violation of the automatic stay.  Despite receipt of service of the complaint, B&E ignored it.  B&E failed to respond or answer the complaint, and it continued to hold the motorcycle.

After entry of default, counsel for the debtor came before the Court at a hearing and provided the Court with support for his request for damages.  At the hearing, both Ms. Edwards and Mr. Edwards testified.[13]  Ms. Edwards testified that the motorcycle was her only mode of transportation to and from employment.[14]  She testified about amounts paid for insurance after the repossession.[15]  Ms. Edwards acknowledged a notice of repossession from B&E, dated and received after the bankruptcy, and her counsel submitted it as an exhibit.  In the notice of repossession, B&E demands Ms. Edwards pay the full indebtedness within ten days, plus repossession costs.[16]  Mr. Edwards then corroborated her testimony, adding details regarding the

---

[10]   Ex. A, at 7, ECF Doc. No. 14.
[11]   Tr. at 10:2–10:14, 17:14–19:4; *see also* Compl. ¶ 20, ECF Doc. No. 1.
[12]   *See* ECF Doc. Nos. 4, 22, 26, case number 18-62164.
[13]   Tr. at 8:5–15:25 (testimony of Jenny Lynn Edwards), 16:14–21:21 (testimony of Wayne Edwards).
[14]   *Id.* at 11:9–11:14.
[15]   *Id.* at 10:17–10:19, 15:3–15:9.
[16]   *See* Ex. A, at 6, 12, ECF Doc. No. 14; Ex. B, at 2, ECF Doc. No. 14-1 ("You have ten (10) days from the date of this notice to pay your account in full. In addition to the total amount due shown above, you may also be required to pay the fee charged by the repossession company as well as a fee for storing your vehicle.").

3

amount of the purchase, the amount of the debt, renewal of the registration, and the exchange with B&E after she filed bankruptcy.[17]

Ms. Edwards requests compensatory damages, emotional distress damages, attorneys' fees, and punitive damages.[18]

## Jurisdiction

The Court has jurisdiction over this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The case involves a violation of Bankruptcy Code section 362 (the "automatic stay") and how much and to what extent the Court should award damages to the debtor for the violation. As the question involves an application of Bankruptcy Code section 362, the Court determines the proceeding to be core. 28 U.S.C. § 157(b)(1); *see* 28 U.S.C. § 157(b)(3).

## Analysis

*The Automatic Stay*

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of" many collection actions including:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

---

[17] *Id.* at 17:14–19:6, 20:14–21:1.
[18] *See* Ex. E, ECF Doc. No. 14-4; *see also* Tr. 23:16–23:22.

4

11 U.S.C. § 362(a). Stated differently, once a debtor files her bankruptcy petition, the Bankruptcy Code imposes a stay of any and all proceedings against the debtor, property of the debtor, and property of the estate. *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292 (4th Cir. 1986).

The automatic stay is not a suggestion. The stay is a command. Simultaneous with the creation of the bankruptcy estate, an automatic stay engages to protect the property included therein from acts to obtain possession or exercise control over it. *See Sexton v. Dep't of Treasury (In re Sexton)*, 508 B.R. 646, 657 (Bankr. W.D. Va. 2014).

*The Automatic Stay Prohibits Post-Petition Repossession of Collateral*

Absent relief from the automatic stay, a creditor may not repossess, threaten to repossess, or in any other way, exercise control of property of the debtor or property of the estate. *See Brogden v. Holmes Motors, Inc. (In re Brodgen)*, 588 B.R. 625, 629 (Bankr. M.D. Ala. 2018) (finding post-petition vehicle repossession, and collection demands for payment, were prohibited acts to exercise control over property of the estate and to collect or recover a claim); *Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46 (Bankr. M.D. Ala. 2003) (post-petition repossession of mobile home where debtor resided violated automatic stay). Absent relief from the stay, a creditor may not collect or demand payment on a pre-petition debt.

In this case, when Ms. Edwards filed her chapter 13 petition, the motorcycle became property of her bankruptcy estate. After that, without leave from this Court, B&E took possession of the motorcycle and demanded payment from the debtor. B&E's actions were plainly acts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," or were acts to enforce a lien against property of the estate or property of the debtor, or were simply acts to collect a debt that arose before the commencement of the case. This is not a close call: B&E's actions are unquestionably prohibited by statute.

*The Automatic Stay Prohibits Retention of Property Repossessed Post-Petition*

Section 362 prohibits acts to exercise control over property of the estate. By refusing to return the motorcycle to Ms. Edwards (or the bankruptcy trustee), after unlawfully repossessing it post-petition, B&E is exercising control over property of the estate.[19] By refusing to return the motorcycle, B&E simply made a bad situation worse.

*The Violation of the Stay Was Willful*

A violation of the automatic stay is willful when a party proceeds to act in violation of the stay despite knowledge of the bankruptcy case. *See Budget Serv. Co.*, 804 F.2d at 292–93 (holding that "ample evidence in the record" of a creditor's intentional attempt of repossession despite knowledge a bankruptcy petition was pending supported sanctions). A creditor does not need to act with "specific intent but must only commit an intentional act with knowledge of the automatic stay." *Morgan v. Bank of the West (In re Morgan)*, 547 B.R. 185, 188–89 (Bankr. W.D. Va. 2016) (quoting *In re Thorne*, No. 08-80022, 2008 WL 2385991, at *1 (Bankr. M.D.N.C. June 11, 2008)). "Willfulness describes the intentional nature of action taken in violation of the stay, rather than the specific intent to violate the stay." *In re Banks*, 577 B.R. 659, 667 (Bankr. E.D. Va. 2017) (citing *In re Highsmith*, 542 B.R. 738, 748 (Bankr. M.D.N.C. 2015)).

B&E did not accidently repossess the motorcycle. It deliberately repossessed the motorcycle. B&E intended to repossess the motorcycle, and it accomplished its intended objective. Once it had notice of the bankruptcy, it knew it was violating the automatic stay. And there is no question in this case that B&E had notice of the bankruptcy.

---

[19] In this case, property of the estate revested in Ms. Edwards when her chapter 13 plan was confirmed. The effect does not change the outcome; whether Ms. Edwards is custodian of property of the estate post confirmation or whether the property of the estate converted to property of the debtor, the automatic stay prohibits exercising control over the property.

The debtor's evidence, all of which is uncontroverted, shows at least three ways in which B&E knew it was violating the stay.  Both Mr. and Mrs. Edwards testified that Mr. Edwards told the repossessing party about the bankruptcy.[20]  Mr. Edwards met with representatives of B&E and personally advised them of the bankruptcy.[21]  In addition, B&E received the Notice of Bankruptcy.[22]  Finally, counsel for the debtor delivered letters to B&E informing of the bankruptcy and explaining in clear language how repossession, collection, and retention violates the stay.[23]  Despite this knowledge, B&E refused to return the motorcycle and demanded payment for the motorcycle and its repossession and storage costs.  All these facts show B&E knew what it was doing.  Indeed, Mr. Edwards testified that during his interaction with B&E, they acknowledged the bankruptcy case with disdain.  According to Mr. Edwards, B&E's representative admitted it intended to disregard the Bankruptcy Code.[24]

More than that, the debtor's uncontroverted evidence showed that she was current on her obligation when she filed chapter 13.[25]  As of the date she filed her chapter 13 petition, B&E had no reason to repossess the motorcycle.  B&E had no contractual default or statutory basis to allow the repossession.  B&E's only possible explanation for its repossession is the bankruptcy.  This circumstance is exactly what Congress aimed to address by the language in the statute.  The language of section 362 could not fit more perfectly into this fact pattern.

*The Bankruptcy Code Allows Damages for the Violation of the Stay*

---

[20]    Tr. at 10:2–10:14, 17:14–19:4; *see also* Compl. ¶ 20, ECF Doc. No. 1.
[21]    Tr. at 18:10–19:4.
[22]    Ex. A, at 8–11, ECF Doc. No. 14.
[23]    *Id.* at 13–15.  The first letter from counsel for Mrs. Edwards was sent via overnight delivery on November 13, 2018. *Id.* at 7, 13. The second letter from counsel was sent to B&E by certified mail; a return receipt acknowledged B&E received the letter. *Id.* at 14–15.
[24]    Tr. at 18:10–19:4.
[25]    Ex. B, at 1, ECF Doc. No. 14-1; Tr. 17:6–17:10.

7

Section 362(k)(1) provides authority for a court to award actual damages in connection with a violation of the automatic stay. *See* 11 U.S.C. § 362(k)(1). "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.*

### Actual Damages

To award damages under section 362(k), a court must find that (1) "a violation occurred," (2) "the violation was committed willfully," and (3) "the violation caused actual damages." *See Skillforce, Inc. v. Hafer*, 509 B.R. 523, 529 (E.D. Va. 2014).

As described above, the Court finds B&E violated the stay by repossessing the motorcycle after bankruptcy (without relief from stay), sending collection demands, and retaining the motorcycle after bankruptcy despite requests for its return. The Court finds these violations occurred with knowledge of the bankruptcy. The Court finds these violations were intentional, not accidental, acts. Hence the first two criteria for statutory damages are met.

At the hearing, Ms. Edwards showed the Court how these acts caused her damage. Specifically, she testified as to the amounts she paid for the motorcycle and the amounts she has paid for insurance for the motorcycle. She also described the impact of her loss of use of the motorcycle. She explained how loss of her use of the motorcycle affected her commute to and from work. She described financial strain, inconvenience, stress and frustration. Her husband corroborated and elaborated her testimony. Ms. Edwards's attorney submitted documentation supporting the amounts paid for insurance, taxes, and registration. The Court finds the debtor has shown all three criteria for statutory damages under section 362(k).

Although she did not plead an action for turnover under section 542, Ms. Edwards demands return of the motorcycle in her prayer for relief.[26] She also requests reimbursement of her actual damages from her loss of its use and enjoyment until such time as it is returned. Because the debtor did not notice an action for turnover (separate from her action for damages for the stay violation),[27] the Court awards money damages to Ms. Edwards but does not order turnover.

Based upon the testimony, the debtor's purchase price of the motorcycle was "right around" $10,000.[28] Based on the testimony, the cost to the debtor for replacement transportation was "about" $4000.[29] Based on the testimony in part bolstered by exhibits,[30] Ms. Edwards paid $703.32 for insurance and $28.00 to renew the registration. Ms. Edwards continued to insure and keep the registration current even while the motorcycle was not in her possession. Finally, the debtor testified to the time lost from work. Ms. Edwards testified that she lost nine hours at a wage of $10 per hour, or $90.00.[31]

The debtor seeks compensatory damages. The Court is satisfied that the loss of the use and enjoyment of the motorcycle is quantified, in this case, by the purchase price ($10,000), and that this amount combined with the other amounts paid by the debtor ($4000 + $703.72 + $28 + $90) fairly represents Ms. Edward's actual damages, for a total of $14,821.72 in actual damages.[32]

---

[26] *See* Compl., at 4 (the "wherefore" paragraph), ECF Doc. No. 1.
[27] To direct turnover, the Court must know who holds the property. *See* 11 U.S.C. §§ 542, 550. In this case, the debtor does not know if B&E holds the motorcycle or has transferred it. Practically, without information about the location or possession of the motorcycle, this Court's order to turnover, if entered, may be ineffective.
[28] Tr. at 20:19–20:23.
[29] *Id.* at 11:15–11:22.
[30] *Id.* at 10:17–10:19, 15:3–15:9, 20:14–20:18; Ex. C, ECF Doc. No. 14-2.
[31] Tr. at 10:22–11:1.
[32] The complaint did not specify or provide particular notice of the amounts requested for damages. At trial, the Court considered testimony from Mr. and Mrs. Edwards, documentation supporting amounts paid for insurance and registration, and a worksheet prepared by counsel for the debtor listing these amounts plus a figure representing the monthly debt payments made by the debtor. The Court concludes the worksheet is not sufficiently helpful in the Court's calculation of damages as it is without support for the debt payment figures. Counsel failed to show why the amounts paid on the loan should be added to the amount claimed for the purchase price. Furthermore, the worksheet listed the purchase price at $7500 which the Court understands from the testimony to be the amount financed for the

Attorneys' fees

Section 362(k)(1) permits recovery of attorneys' fees. To recover attorneys' fees, "such fees must be reasonable and necessary." *In re Miller*, 447 B.R. 425, 434 (Bankr. E.D. Pa. 2011).

The Court finds the fees are necessary and reasonable. B&E has refused to return the motorcycle despite letters, conversations, and even service of the adversary proceeding complaint. Ms. Edwards simply had to incur attorney fees to bring this action. Counsel requested fees of $2325.65, plus time related to the trial. The Court finds two hours for the trial and the post-trial filings of authorities at the direction of the Court ($400 x 2 = $800) represent necessary charges. This Court finds these amounts to be reasonable. Counsel's hourly rate is within the market rates for bankruptcy professionals. Counsel's time records reflect no excessive charges and no duplicate entries. Counsel's records indicate efficient services in connection with this matter. Based on the authorization under section 362, and this Court's review of the amounts, the Court concludes the award of attorney fees of $3125.65 is appropriate.

*Emotional Distress*

During the hearing on July 15, 2019, Ms. Edwards requested an award of $10,000 for emotional distress. This was the first time this request was made before the Court. She did not request damages for emotional distress in her complaint.

Federal Rule of Bankruptcy Procedure 7054 provides that Rule 54(a) through (c) of the Federal Rules of Civil Procedure apply in adversary proceedings. Fed. R. Bankr. P. 7054(a). Rule 54(c) states that a "default judgment must not differ in kind from . . . what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

---

purchase but not the purchase price. In this case, the Court finds the purchase price of $10,000 an appropriate measure of the debtor's damage for loss of use and enjoyment caused by B&E's unlawful repossession and retention.

This Court can only consider relief requested in the complaint. *See GMAC Mortg., LLC v. DeRose (In re DeRose)*, Adv. P. No. 08-10031, 2009 WL 5217046, *8–9 (Bankr. D.D.C. 2009). Because emotional damages were not requested in Ms. Edward's complaint, and B&E therefore did not receive notice of this demand, the Court will not award such a request.[33]

*Punitive Damages*

To determine if punitive damages are appropriate, courts should consider four factors: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *In re Seaton*, 462 B.R. 582, 595 (Bankr. E.D. Va. 2011) (quoting *Rawles v. Wych (In re Rawles)*, Adv. No. 08–00555, 2009 WL 2924005, at *2 (Bankr. D. Md. June 18, 2009)). Punitive damages are reserved for cases of egregious and intentional misconduct. *See Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 419 (Bankr. E.D. Va. 2011) (citing *In re Carrigan*, 109 B.R. 167, 172 (Bankr. W.D.N.C. 1989)). "Punitive damages 'may be appropriate under 11 U.S.C. § 105 when a creditor's actions are egregious and malevolent.'" *Boyd v. New Peoples Bank, Inc. (In re Boyd)*, 562 B.R. 324, 330 (Bankr. W.D. Va. 2016) (quoting *Workman v. GMAC Mortg. LLC (In re Workman)*, 392 B.R. 189, 196 (Bankr. D.S.C. 2007)).

To reach the egregious and malevolent level, a creditor must act in a way that goes beyond mere willfulness and resemble a specific intent to violate the automatic stay. *In re Seaton*, 462 B.R. at 604 (citing *In re Rountree*, 448 B.R. at 419).

In this case, after the repossession, Mr. Edwards met with B&E to explain the automatic stay. Ms. Edwards's husband described in his testimony that B&E was dismissive of the authority

---

[33] Even if the complaint could be construed to anticipate and request emotional distress damages, the Court finds the debtor failed to show sufficient support for emotional distress damages. The evidence failed to provide any support for how the request for emotional distress damages was calculated.

11

of the bankruptcy court. Counsel for Ms. Edwards notified B&E politely but firmly about the need to return the motorcycle in order to comply with the law. B&E ignored the letters. B&E had ample opportunity to correct its violation, both at the time of the repossession and after, yet failed to mitigate its harm.

Punitive damages, as the name suggests, are meant to punish and to deter future violations. To serve as an effective sanction and deterrent, it is fitting to consider the ability of the creditor to pay the damages. *See In re Seaton*, 462 B.R. at 595. In this case, the creditor is an independent small business. While the debtor provided no evidence of an ability to pay, the debtor all the same requested an amount of punitive damages not much greater than the amount of her actual damages. The Court agrees the amounts of punitive damages, for the conduct in this case, should exceed the debtor's actual damages in order to appropriately serve as a sanction and deterrent yet not be so outrageous as to be impossible for the creditor to satisfy.

The debtor requests $25,000 in punitive damages. The Court finds $25,000 in punitive damages is reasonable. *See Budget Service Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir. 1986) (punitive damages were reasonable, despite being over 2,000% of the compensatory damages).

Considering the facts vis-à-vis the factors[34] for determining whether punitive damages are appropriate, the Court concludes punitive damages are appropriate. The Court approves the amounts requested.

---

[34] The fourth factor considers any provocation by the debtor. While the debtor did not present evidence showing she did not provoke B&E, the Court will not weigh her silence on this factor against her. Nothing in the debtor or her husband's description of the interactions with B&E indicate any provocation, baiting, or aggravation on their part. Moreover, B&E had ample opportunity to present any defense or support for why it should not be subject to punitive damages but chose not to do so.

The Court will contemporaneously issue an Order consistent with the findings and ruling of this Memorandum Opinion.

A copy of this Memorandum Opinion shall be provided to the debtor; debtor's counsel; the chapter 13 trustee; the Office of the United States Trustee; and B&E Transport, LLC, D/B/A B&E Motors, c/o Robert Bache, Registered Agent, 16596 Greens Corner Rd., Culpeper, VA 22701.